Again, good morning. Judge Brasher and I are especially happy and frankly thrilled to have our colleague Judge Karn sitting with us today over Zoom. Just one reminder before we begin about our light system. One of my wiser colleagues used to say that the red traffic light was not a suggestion and so I would just relay that to everybody here. When you see the red light flashing, please do conclude. Of course, if you're in the middle of answering a question, feel free to finish answering that question. With that, we'll start with the first case. We have A.P.A. v. U.S. Attorney General. We'll hear from the petitioner. May it please the Court, Counsel. My name is Rodney Saldana. I'm pro bono counsel for the petitioner. I'm from Cooley LLP. I'd like to reserve five minutes for rebuttal time. Ms. U.P.A. is an HIV-positive transgender woman from Mexico. She has lived in the United States for over 20 years. She fears that if she is forced to return to Mexico, she will be persecuted because she is transgender. She respectfully asks that this Court vacate and remand the BIA's decision denying her claims for asylum, withholding of removal, and cat relief. The briefs raise numerous issues. At the outset, I'd like to focus my argument on the withholding of removal claim, specifically focusing on the future threat to Ms. U.P.A.'s life and freedom in Mexico. Ms. U.P.A. submitted significant evidence of a pattern or practice of persecution in Mexico, at the very least, evidence that is probative of whether a pattern or practice exists as to transgender women. She submits that the agency... Can I ask you just a quick question? I appreciate you're going to that, but you do have a past persecution issue as well. Do you have anything you want to say on that before you move to future persecution or threat of future persecution? Yes, thank you, Judge Brasher. We submit that this Court should vacate the agency's past persecution decision, and we think there are a few reasons. The first and foremost is that the agency relied on now vacated decisions by the Attorney General, matter of AB and matter of ACAA. And we've argued that these decisions figured significantly in the agency's past persecution analysis, which emphasized what the agency viewed as private criminal acts of violence. They were referring to the multiple rapes that she survived as a four-year-old in Mexico. She referred to those rapes on page 157 of the record. The Board, though, didn't categorically... I think the problem with those opinions and why the Attorney General withdrew them was that they had made some comments that essentially private conduct could categorically be excluded. And I think to the extent that there was any reliance on that, that would be problematic. But it seemed that the Board focused less on that and more on the nexus part of it, meaning not that private violence, in this case the horrific rapes that were part of the record here, did not fall within what could be past persecution, but that that past persecution, there was no evidence that it was connected to or on account of, as the statute uses, one of the protected grounds. Can you focus on that? Yes. I do want to say that the position is that because the Attorney General has vacated these decisions, this Court really shouldn't be affirming a past persecution analysis that relies on matter of AB and matter of ACAA. The Attorney General is the nominal respondent in this case, and he has said that the agency should not be relying on those decisions. And both of those are cited, including with respect to the BIA's affirmance of the one central reason, finding that it said matter of ACAA for that proposition. So the Attorney General, the very person you're referring to, has filed supplemental authority with us, which has essentially said, yes, these were cited, but these decisions were cited for really sort of general legal propositions and not for the sort of the offending one, the issue that you and I are talking about right now, which is this sort of categorical bar which was wrong. And so, again, it seems to me that the Board, what the Board was saying was that in this case, the private violence, the rape here, was not connected on account of one of the protected grounds. Thank you, Judge Luck. I think the problem with that analysis is the fact that there really wasn't much evidence in the record to support that finding. We solely had a question by the D.H. Attorney asking Ms. APA, did she know why her uncle committed these rapes? That's on page 175 of the record. And the government concedes that she could not know the motivation or why her uncle did these, did the rapes. Is it the petitioner's burden? It is the petitioner's burden. We would submit, however, that she was pro se and the I.J. had a duty to develop the record. So we've dealt with issues like that before, that we've categorized those essentially due process arguments, that there's a due process right. I think we've assumed it, I don't know that we've held it, for the I.J. in a pro se case to help develop the record so that we're able to do a consistent review. I think what we've said is where those deficiencies took place, though, the BIA, those have to be brought to the BIA's attention first so that the BIA gets the first pass on vacating and then sending it back. And in this case, as I understand it, the petitioner was not pro se at the time of the appeal. The petitioner had been represented by ABLE counsel at that point. That's correct. Ms. APA had BIA counsel. And I recognize, you know, what you're saying, Your Honor, as to whether this was exhausted before the agency and that that would present a jurisdictional bar. I think the response is that Ms. APA's BIA counsel did note that it was unclear what the I.J. was doing in his analysis as to past persecution. And what we have is the BIA trying to essentially refashion the findings into something that would make sense. And so we've also argued that moving on beyond the vacature of the Attorney General decisions by the Attorney General, that the BIA was affirming findings that the I.J. never made. He doesn't refer to the one central reason in his analysis, that test. And so we don't understand. This Court has said in Ayala that when the BIA describes findings that the I.J. never made, that that's a basis to vacate and remand. Can I ask you with some of the little time you have left about the jurisdictional issue, because I think it's significant, at least as to the asylum claim. I take from you going to the withholding claim that you also see that that's a difficult issue for you to overcome. It seems to me that, and I'm asking, I do not know the answer to this, but it seems to me that our decision in Chacon, that the holding of Chacon isn't that the opposite of what was said by the Supreme Court in Guerrero, that the application of law to facts does not fall within the jurisdiction revision provision under 2D, big D, 2 big D, but that in Chacon, what we said was timeliness is a factual determination. Now, I think you acknowledge that in your brief, and what you say is you think that's wrong, and that may be wrong, by the way. But if that's the holding of Chacon, that timeliness is a factual determination, how is that inconsistent with Guerrero, which all Guerrero said was that the jurisdiction revision provision, the one post St. Sire, that sort of restored jurisdiction, the question of law includes applications of facts to law? Thank you, Judge Watt. So my reading of Chacon-Botero is that this court said that an asylum timeliness determination did not involve a constitutional question or question of law because they are factual or discretionary determinations. That's the language in Chacon-Botero accepting the position of the Seventh Circuit in the De Sille case. I think the point is that that would never be jurisdiction, even under 1252A2D, and the way the Supreme Court interpreted Guerrero-Lazaprilla, the phrase questions of law in that case, they're categorically inconsistent. The issue is, and by the way, I think you're 100 percent right in describing Chacon. I agree with you completely. But if our determination is that these are discretionary and factual, by definition they are not questions of law. And if Guerrero only interpreted the phrase questions of law, that doesn't seem inconsistent with the determination that timing, I'm going to give you time, don't worry, that timeliness is a discretionary or factual determination. The inconsistency is that even though the Supreme Court said that the facts are established and disputed, the application of a legal standard to those facts is a question of law. That's the mixed question of law and fact. But if we've said that timeliness is just discretionary or factual, not that it is an application of fact to law, but that the decision itself, soup to nuts, is factual, then how does a separate determination on a separate regulation or statute saying that the term questions of law means, as applied to that application of fact to law? Well, the facts of the agency has a fine under the statute. So is this a changed circumstance materially affects the applicant's eligibility for asylum? That's a legal standard set forth in the statute that this Court never even considered in the Chacon-Botedo case. It said these are factual — what the agency is doing is making factual determinations as a matter of fact. So you're not talking about something different. So timeliness is the way the statute is written is it has to be brought within one year. And then there's the unless that part. And so all I'm talking about here is the first part, not the unless part. Okay. Thank you. So I understand that that part of the issue would — we're not challenging the fact that Ms. APA didn't apply for asylum within one year. We're really focusing on the statutory exception to that one-year filing deadline. I see my time is running low, and so I do want to turn to the withholding of removal analysis and really just identify the errors there that we think that the agency committed. At base, we think that the agency failed to give reasoned consideration to Ms. APA's claim. Her claim was that she's a transgender woman and that she's going to be persecuted if she is forced to return to Mexico. What the agency did, the first error that we've identified, is it did not really focus on her being a transgender woman. It broadened the claim to focus on the broader LGBT community. That in and of itself seems to be an error in the particular social group the agency was focused on in its analysis. And also by broadening the claim, the agency was able to not focus or disregard highly probative evidence about the significant murders of transgender women in Mexico. If you look at pages 204 of the record, pages 235, page 227 of the 2018 State Department report, you will see a consistent pattern of violent homicides of transgender women in Mexico. I see my time is now running low, so I'll take up the point on rebuttal. Thank you. Judge Karnes, Judge Brasher, anything else? Thank you, counsel. Counsel for the Attorney General. Good morning. Good morning, Your Honors. May it please the Court. Rachel Berman-Forest, United States Attorney General. This Court shall dismiss in part and deny in part this petition for review. The petitioner has many equities in the United States and experienced terrible abuse as a young child. But like all applicants, she has the burden to show that she filed a timely asylum application or meets an exception, a nexus to a protected ground, a well-founded fear of future persecution, and an individualized risk of torture. All right, so let's break that up. We'll start with the timeliness issue. So why is your opposing counsel not correct that in Chacon, there's a heavy reliance on the jurisdiction restoration provision and what that means? The whole opinion is, what does our timeliness jurisdiction jurisprudence do after the REAL ID Act and the jurisdiction restoration provision? And now what the Supreme Court has told us is where there's an application of uncontested facts to law that there is, in fact, jurisdiction. Is the timeliness determination not an application of uncontested facts to law? It is not, Your Honor, because there is. It's not here or it's not ever? It is not ever, Your Honor. Why is that? How is that the case? How is that the case where, assuming petitioner, and I'm not sure the petitioner did this, by the way, but assuming petitioner came and said, we agree with every single fact found by the IJ and every single fact found by the BIA, we still think it is not timely or timely because? Because the petitioner could not do that and also put forth the claim that she met an exception to one-year filing deadline. And so to that, I would turn to the requirement not just that the petitioner established a changed circumstance or an extraordinary circumstance, but that having established the circumstances, filed her application within a reasonable period of time. But what if the BIA, so here I'm not really sure why the BIA said there was no changed circumstances. It seems like going from male to female is a pretty big changed circumstance. But what if the BIA said the only kind of changed circumstances we look at are changes in country conditions and not changes in personal circumstances? Wouldn't that be a legal determination that the BIA is making that we could arguably review? That would be a legal question the Court could review. Okay. Because that would be, the regulation sets out that personal circumstances can constitute a changed circumstance within the meaning of the statute. So there are some timing, I mean, I guess that sort of undermines your previous answer, right? So there are some timing decisions that the BIA could make that would be legal in nature, that would be pure legal questions that we would be able to review. Yes, there are. I guess what constitutes a changed circumstance, whether it was material or not. Right, so why did the BIA deny this? Why did the BIA say that this was not a changed circumstance? BIA found that it did not constitute a changed circumstance that was material to her application for asylum. And how could that possibly, I mean, how could that possibly be, right? I mean, the petitioner's asylum application is entirely predicated on the idea that the petitioner has transitioned from male to female. I mean, just explain to me how that would not be relevant or, you know, determinative as to her asylum application. The Board of that provided explanation to that in its decision. Okay. Well, do you have one? I mean, does anybody have one? No, Your Honor. Okay. But the Board has an alternative, equally dispositive determination on the timeliness issue, which is that the petitioner did not file her asylum application within a reasonable period of time. And that finding is not reviewable by this court under USC 1158A3. So your point then, which I think is a very reasonable point, is to get back to Judge Lutz's question, is not necessarily that there is nothing that we can review within this timeliness determination, but on the facts of this case, the BIA said that seven months was not reasonable and we Why not? Why is the fact that seven months is not reasonable or the holding of seven months is not reasonable, not a fact? The seven months is a fact. But what's reasonable in terms of the exception, which is a provision of the law, that's law of the fact, is it not? No, Your Honor, because nowhere is reasonableness or reasonable period of time defined, either by statute or provision. That doesn't matter. We get terms and statutes on prior decisions all the time. They're not defined. That doesn't mean it's not a question of law. Your Honor, what constitutes a reasonable period of time is something that's left up to the agency's discretion. And to that, I would That's separate from whether it's a factual question or a law, it's a discretionary matter. But whether or not you could change, transgender change could ever qualify as an adequate change in circumstances for the exception is a legal issue, isn't it? It would depend on the agency's decision on that issue, Your Honor. If the agency properly applied the materiality, the standard and regulation and in the statute and just and found and explained why the petitioner's transition did not constitute a material change in circumstance, the Court would need to find an error of law there in order to Counsel, in brief, your opposing counsel says that the problem isn't that you're making a standardless argument. It is standardless by rule and by design, and so we don't have jurisdiction to review. We've said that in other sort of standardless contexts. That's your argument. I'm not sure I agree with it. I think I tend to agree with Judge Carnes, but let's put that aside for the moment. What your opposing counsel says is not that. What your opposing counsel says is you all have set out in your opinions some factors to consider in the reasonableness determination, and you have not applied your own law correctly in doing that, and that is the error which needs to be revisited by the BIA. Can you respond to that argument? The regulation for the change of circumstances provision of the regulation just requires the petitioner to file her asylum application within a reasonable period of time. I know, but matter of TMH, though, I'm talking about the case law. The matter of TMH seems to set out some factors and some thoughts that need to be considered. In that case, the BIA looked to the interim regulations and the enactment of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 to be able to determine here are some things we look at in making the call, and they set out if it's six months or under, we do it this way, if it's over six months, that's the problem, or that's the issue that they're identifying, and why would that not be something that the BIA has to do, and did it do it here? Because there, Your Honor, the Board was rejecting an immigration judge's creation of a categorical rule regarding reasonableness, and instead holding that reasonableness is a determination that has to be made case by case on each case's individualized circumstances. And so in discussing those factors, the Board was explaining why a categorical rule was inappropriate. Does the Board or the IJ have to apply those factors in making its determination? Or can it just say, here, seven months, not reasonable, end of story? That's sufficient, Your Honor. Could you talk a little bit about where your opposing counsel left off, which is the fear of future persecution? And in particular, it seems like the IJ here said something along the lines of transgender folks get beat up and attacked everywhere, and so this is not a Mexico problem, it's just a universal problem, and so there's no fear of future persecution if you're removed to Mexico. What do you think about that? Your Honor, the immigration judge looked to the country conditions evidence in the record, and specifically addressed the State Department report in the record to find that there was insufficient evidence to support the petitioner's claim of a pattern or practice of persecution. The immigration judge did talk about how the crimes the petitioner was talking about do occur in the United States, and if that had been all that the immigration judge had relied upon, that these crimes also occur in the United States, that would have been an error. But the immigration judge didn't do that here. The immigration judge looked directly to the country conditions evidence in the record, cited to that country conditions evidence in the record, and so the decision was based on the country conditions evidence and not on the immigration judge's speculation or ideas about how common these crimes are worldwide. I'm more troubled by where your opposing counsel ended in the reference to the fact that the IJ didn't make a nexus finding in the IJ's order with regard to the past persecution, and that the BIA essentially makes one up or sort of crafts one. And we have said, your opposing counsel cites Ayala correctly, we have said that where the BIA sort of crafts a finding that wasn't there underneath, it can't really do that. That's not the purpose of an appeal is to find facts, and nexus is clearly a fact finding. It's the purpose of the trier of fact to do that. Show me where in the IJ's order that there's a nexus finding. Yes, your Honor. On page 85 of the administrative record, twice the immigration judge says that the patricianer has not shown a proven, quote, past persecution based on a protected ground. And then the immigration judge says this again on the next page, page 8, AR 86 of the administrative record. Now, the immigration judge did at one part of his decision on page 85, in one sentence, conflate cognizability of a particular social group with nexus. That got out of the waters and made, you know, that sentence unclear. It says, let's read the sentence. It is unclear why the uncle did this, but it is not a cognizable particular social group because it is a private criminal act of child abuse by the uncle. Is that not a determination that at least with regard to the private criminal act issue, that it goes to the cognizability of the particular social group, which is really what ABA was about, or matter of AB was about, and not with regard to nexus? That sentence alone, your Honor, is unclear about that. It definitely, that sentence conflates cognizability with nexus to a protected ground. But in the preceding sentence. Conflate is not the word I would do. I mean, it says. Am I right that that is what matter of AB was about? In other words, matter of AB said you cannot have a cognizable particular social group of being the victim of private violence, right? That was part of what matter of AB was about, which is why private violence couldn't be sufficient, right? Yes, your Honor. And that's now been withdrawn. Yes, your Honor. So that sentence seems to go to that issue. And then the BIA comes along and sort of refocuses it on nexus. I would point to the rest of that paragraph, your Honor, in the starting of the next paragraph, that the judge, the immigration judge found that the petitioner did not prove past persecution on a, based on a protected ground. So that is where the immigration judge is making a nexus finding. It was not as clear if he had, he should have separated out cognizability and nexus to make that decision clear. He did not do that in that sentence that you said, your Honor. But the immigration judge did make a determination on nexus. So let's say for the moment, this is not something that came up with your opposing counsel, but I think it's, we need to talk about it. Let's say for the moment that we disagree with you on timeliness and we find that the findings regarding reasonableness and changed circumstances were just completely insufficient. So on asylum, there's an alternative holding by the BIA using its discretionary authority to say even if someone qualifies that the equities weigh in favor of us not exercising our discretion. In brief, your opposing counsel lays out two problems with that. The first problem is that there isn't a discussion or focus of some of the underlying facts of that, which is required by BIA case law. And the other is that there's no discussion of what the persecution was, having assumed that someone was persecuted, having qualified for the assumption being that you qualify for asylum, but we're not going to exercise discretion. If you can discuss those two things. Yes, your Honor. The agency did not abuse its discretion in denying the petitioner's application for asylum as a matter of discretion. The board weighed the equities and the negative facts in the record of the petitioner's criminal history in making this determination. Now, as to opposing counsel challenges that the board did not consider evidence of rehabilitation, but there's no real evidence of rehabilitation in the record. The evidence the petitioner points to is that the petitioner stopped drinking at some point in 2019. But the problem with that is there's not enough connection between her stopping drinking and her convictions for DUI. Isn't timeliness a factor that is considered, as I understand the board's own case law, the timeliness from a conviction? In other words, if the convictions were 20 years ago, that's a lot less relevant to the equities than if they were, you know, yesterday or the day before I applied. Yes, your Honor. How recent their criminal convictions are is not being taken into consideration. But that's not even discussed at all. No, your Honor. But the board, no, your Honor, that part was not. But the board considered the equities sufficiently enough. The fact that the petitioner's convictions being so recent would have weighed more heavily against her than if the convictions had been longer ago does not create error in the agency's discretionary determination. The agency considered her criminal history, it considered her equities, it considered the past harm that she experienced, it considered her current health issues. The problem is with regard to past harm that, at least in this context, we're assuming that she qualifies. And so assuming that she qualifies, it seems odd to then consider all this other stuff about how she doesn't qualify when there's an assumption on the discretionary part that she does qualify and that she has suffered, at least past or future persecution, that is on account of a protected ground. Two quick points. I see that I'm out of time. You may answer. For, where the board said, even were the respondent eligible for asylum upon de novo review, we deny it's a matter of discretion. The petitioner argues that means the board assumed that the petitioner had established that she met the definition of a refugee. But reading that sentence alone, it's ambiguous what the board means there. If you read it with the preceding paragraph where the board concluded she was not statutory, she was statutorily ineligible for asylum, a more reasonable reading is that. Don't you have to assume, though, if you're at the discretionary point, that someone meets it? In other words, the whole premise of this is, even assuming that she meets these requirements, we would exercise our discretion not to, right? Isn't that the whole premise? Not necessarily, Your Honor. It could be assuming that she wasn't statutorily ineligible, there was no bar to her application, and then the discretion issue. But even if not, Your Honor, under a matter of PULA, which is the seminal case for the board on determining what factors to consider and whether someone merits asylum as a matter of discretion, it's the danger of future persecution that's important there. And someone can be eligible for asylum solely on the basis of past persecution. And in a matter of PULA, that was a case where the petitioner had established eligibility for the holding of removal, so had shown a clear probability of persecution, which is not what happened. Judge Karnes, Judge Brescher. Thank you, counsel. Thank you. Counsel, you've reserved five minutes. So the first point I want to make is that a lot of the discussion focused on the asylum timeliness determination issue and the asylum determination denial. Regardless of what the court thinks about that claim, there's still a withholding of removal claim and a CAT claim. And nothing that this court decides with respect to the asylum determination really affects those claims.  I do want to say with respect to the discretionary denial of asylum, if this court finds that there's jurisdiction over the asylum timeliness determination and vacates the BIA's decision as to that effect, the court should not proceed further. The court said that her change in status as a transgender person was not a changed circumstance. I don't see how the BIA even figured that into its weighing of the equities. And so we would just say there's no need to consider beyond the way the agency erred. But if the agency didn't consider, made the wrong considerations regarding changed circumstances, I don't see how that error infects the completely separate decision of saying we weigh the equities with regard to a discretionary call. I'm having trouble seeing how one would bleed into the other. Thank you, Your Honor. I think the essence of our core argument is that the agency really did not hear and think about her claim as a transgender woman. We think that appeared in the way the agency viewed her changed circumstance as a transgender woman, saying it's just a personal change in circumstance. We don't see any sort of way in which the agency even considered her being transgender, the persecution that she would face in Mexico in the discretionary denial sort of portion of it. And so we don't think that the way that the termination was made in the BIA's decision can stand with the way it is. We would just submit that the court can let the agency redo it. It can basically reset. That's the submission as to that issue. As to the withholding of removal claim and focusing on picking up where I left off as to the future threat to Ms. APA's life or freedom in Mexico, I do want to turn to the IJ speculation. One of the things that the government said today was that the IJ cited the record. Well, if you look at page 87, what the IJ says is, like any large country, any large city, there will be isolated incidents of violence against LGBT individuals. That happens in the United States. It happens in any country. So the real issue is whether there has been a showing of a pattern or practice of persecution in Mexico. This evidence is just not enough. So he's relying on his speculation about the normalcy of anti-LGBT violence in any country to... Well, I was going to ask you. So, you know, I am befuddled in this case, both about the BIA's changed circumstances. I don't get that one. And isn't there another reading of the IJ statement that you just read that is along these lines? That what the IJ is saying is that this is not persecution, that this is just sort of criminal conduct and it doesn't rise to the level of state-sponsored or, you know, state-ignored persecution. He's pointing out that, you know, this happens kind of everywhere. So it's sort of criminal conduct. Isn't maybe that the fairest reading of what the IJ is saying? Well, this court has recognized that individuals can be persecuted on the basis of their membership in a particular social group through murder. So the fact that they're... Even if the IJ is viewing this as crime that's happening... But to Judge Brasher's point on the torture claim, that's not really relevant. In other words, without a doubt that private violence can be a source. But for torture, it requires explicit acts by a government or open-eye acquiescence to the torture. So to Judge Brasher's point, in saying that, is what really the finding that I think the IJ makes here is things are terrible there, here, and other places with regard to this issue. But we can't... It's unattributable to the state because for the reasons that he then lays out, which is the state has passed human rights laws that affect the transgender community. It has prosecuted people. It has a civil rights commission that has acted. It's done all these things which seem to suggest that the state hasn't acquiesced or acted that way. So just to distinguish, so the IJ's analysis of asylum, which is whether the government's unwilling or unable to protect private actors who are committing these acts of persecution, the CAT standard, as you know, it requires a different standard with respect to the involvement of government officials and the IJ merely incorporated this earlier analysis. But here we are reviewing the BIA decision in the first instance and only the IJ decision to the extent that the BIA agreed with that decision. There's no analysis of the governmental involvement in the CAT analysis of the BIA's opinion. And so I don't think that's an issue before the court, respectfully. So with turning back to this issue of the IJ's speculation, I think there's a straightforward failure to give recent consideration by the BIA. The BIA said the IJ noted as he noted, and they claimed that he cited the record, but he didn't cite any record evidence. I think it's clear from reading his opinion that he is relying on his own speculation. Even if you accept Judge Brasher's comment about what he was really doing there, it's still his speculation. And we think this court has said that the agency needs to decide the case given the facts and evidence in the record. So what do you take about the BIA's discussion in the paragraph that it discusses this, where it says, look, the Mexican government has taken positive measures to protect this community. The country evidence indicates that there's widespread discrimination, but these crimes just aren't frequent enough to sort of establish a pattern in practice of persecution. I mean, what do you say about that determination? I mean, there are a number of issues with that determination. The first, well, the BIA never referenced what those positive measures were. So the most we can do is look at whether it's referring to what the IJ said. The IJ actually focused on an anti-discrimination law that protects LGBTI individuals. Generally, there's no indication of when that law was passed. That law appears to be decided, excuse me, cited in the Ninth Circuit's 2015 decision of Avendano Hernandez v. Lynch. So there's some suggestions that law has actually been around. But there's record evidence also showing a pattern, an increasing pattern of violence, homicides against transgender women. I would direct the panel to page 251 of the record. There's a chart that actually shows the increase in transphobic murders starting with the passage of a law that allowed same-sex marriage in Mexico City. And you see it exponentially increasing. And when you actually match that up with the other record sites on page 204, page 235, even the State Department report with the reference to 56 killings of transgender individuals in November of 2017, an average of five per month, none of that's referenced in the BIA decision. None of that's referenced in the IJ decision. We've also argued that the agency just did not consider Ms. APA's argument that there's a difference between de jure measures and whether there's a pattern or practice of persecution on the ground. We submit that there is a de facto reality of persecution. At the very least, the agency did not consider these facts in analyzing her claim. Thank you, counsel. And counsel, we acknowledge that you took this case for a bono. We appreciate it. And thank you for your service. Thank you. We'll call the next case, Mr. Beasley v.